## THE MARJORIE R.
## THE SCRANTON.
## THE CLEVELAND.
## THE GRACE.
### No. 17512.

District Court, E. D. New York.
March 7, 1946.

Mahar & Mason and Joseph M. Meehan, all of New York City, for libellant.

Hagen & Eidenbach and Charles Hagen, all of New York City, for claimant, Erie R. Co. (Tugs Scranton and Cleveland).

Kirlin, Campbell, Hickox & Keating, of New York City, and Harold B. Finn, of Washington, D. C., for Tug Grace and Grace Line, Inc.

INCH, District Judge.

Libellant, owner of the scow Marjorie R, sues the tugs Scranton and Cleveland, owned by the Erie Railroad Company, and the tug Grace, owned by the Grace Line, Inc., for damages received by the said scow.

Libellant is entitled to the usual decree, the real issue being as to whether the tug Grace or the other tugs, or both caused the damage.

There is little difficulty about material facts. About 9:50 p. m. December 21, 1944 the tug Scranton approached Pier 48, North River, with the large steel float 4529 in tow alongside for the purpose of landing this float at the south side of Pier 48. Float 4529 is a very large float and was carrying sixteen loaded freight cars. The tide was ebb with a strong northerly wind. Visibility was, however, good. Immediately south of Pier 48 is Pier 46 with five or six barges moored at the end thereof and a steamship lying, at the north side of said pier, with her stern protruding beyond the end of the pier.

Pier 48 is a private pier leased to the Erie Railroad Company and on the end thereof clearly visible to any vigilant and careful captain is a sign as follows: "Private property, do not tie up boats to end of pier. Erie Railroad". In my opinion that sign was there at the time of this occurrence, although the captain of the tug Grace attempted to indicate that it was not there and testified, that even if it was he would have tied up the scow as he did.

The captain of the tug Scranton, with this long, heavy, and cumbersome float alongside was compelled to perform a skilful and difficult maneuver in order to safely avoid the vessels below Pier 48 and yet place the float, with her loaded cars, in the slip. As I have said the tide was ebb and this maneuver consisted of going somewhat above Pier 48 in order to enter diagonally toward the north side of Pier 48.

The tug Cleveland, when the proper position had been arrived at by the Scranton with her float, then came out and took up a position near the outboard end of the float in order to hold this end against the ebb tide. The forward end of the float was then permitted to swing with the tide toward the slip between Piers 46 and 48 and this would afford an easy entrance for the float.

While this difficult maneuver was taking place, down the river comes the tug Grace with libellant's scow in tow astern. She rounds to, and deliberately lands the scow Marjorie R at the end of this Pier 48.

It was certainly evident to the captain of this tug Grace what the tugs Scranton and Cleveland were about to do. The captain of the Scranton blew danger signals to the Grace. The captain of the tug Cleveland shouted to the Grace not to tie up the scow at the end of Pier 48, but none of these warnings affected the captain of the Grace who, apparently wishing to get rid of his tow, completely disregarded the warnings and the situation which he was causing and after tying up the scow at the end of Pier 48 went about his business.

When the captain of the Grace thus consulted only his own convenience and carelessly placed the scow Marjorie R at the end of Pier 48, ignoring the difficult maneuver of the tugs Scranton and Cleveland, it left the Erie tugs with their long and heavy float in a most dangerous position. If they had attempted to back, the tide and the wind would have brought the float against the ship and barges just below Pier 48. There was nothing left for them to do but complete their maneuver.

Moreover, the captain of the Grace had so tied up the scow Marjorie R that because of the slackness in her lines and the ebb tide she protruded beyond the southerly side of Pier 48, a distance of 10 or 15 feet, thus clearly obstructing the entrance to the slip. Nevertheless, in spite of this careless and deliberate act on the part of the captain of the Grace, the maneuver of entering the slip was almost safely completed by the Scranton and Cleveland. Unfortunately, however, this heavy carfloat did rub along the starboard side of the scow and damaged some of the planks on her side.

In my opinion the only tug liable is the tug Grace.

Regardless of whether the unfortunate scow Marjorie R had been made to become a trespasser, as to which point I do not deem it necessary to decide, in view of the plain carelessness of the captain of the Grace, I am satisfied that a fair consideration of all the testimony indicates that this damage to the scow was caused solely by the inexcusable negligence of the captain of the Grace and that the captains of the Erie tugs Scranton and Cleveland, faced as they were with a very difficult situation, did all that any prudent and careful mariner could do under the same circumstances.

While I would not be surprised that in the dangerous position that the captain of the tug Grace had left the scow she might have been in the way of other boats later entering the slip, the record does not indicate to me sufficiently any reason for doubting that the damage and collision between the carfloat and the scow took place as described by the witnesses without fault or negligence on the part of the tugs Scranton and Cleveland and due solely because of the negligence of the tug Grace.

The libel against the tugs Scranton and Cleveland is dismissed and libellant is entitled to a decree against the tug Grace.

Submit findings of fact and conclusions of law.